FILED

2016 Mar-28  AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| CHARLES HUNTLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:14-cv-02480-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum of Opinion

## I.  Introduction

The plaintiff, Charles Huntley, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").  Mr. Huntley timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Huntley was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. His past relevant employment experience includes work as a Bobcat operator. (Tr. at 59.)  Mr. Huntley claims that he became disabled on June 6, 2011, due to shortness of breath,

dizziness, poor balance, high blood pressure, left ankle pain and numbness, and sleep apnea. (Tr. at 35, 117, 157).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Huntley meets the insured status requirements of the Social Security Act through December 31, 2016.  (Tr. at 16.) He further determined that he has not engaged in SGA since the alleged onset date of his disability. (*Id.*)  According to the ALJ, Plaintiff has the following severe impairments: hypertension and status post 2010 open reduction and internal fixation of bimalleolar fracture of the left ankle. (Tr. at 16.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 F.R.C. Part 404, Subpart P, Appendix 1. (Tr. at 17.) The ALJ did not find Mr. Huntley's allegations to be totally credible, and he determined that Mr. Huntley retained the RFC to perform light work with the following limitations: lifting and carrying up to twenty pounds occasionally and ten pounds frequently, sitting up to six hours, and walking and/or standing six hours;

frequent climbing of ramps and stairs, balancing, and pushing/pulling with the left lower extremity; and no climbing of ladders, ropes, or scaffolds or work around hazards (Tr. at 17.)

According to the ALJ, Mr. Huntley is unable to perform any of his past relevant work, he is a "younger individual," and he has a high school education, as those terms are defined by the regulations (Tr. at 23.) He determined that "[t]ransferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Guidelines as a framework supports a finding that the claiming is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*)  Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") who testified that there are a significant number of jobs in the national economy that Mr. Huntley is capable of performing, such as bench assembler and inspector/packer.  (Tr. at 24.)  The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 6, 2011, through the date of this decision."  (*Id.*)

## II.   STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).   Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Plaintiff alleges that the ALJ's decision should be reversed and remanded for five reasons.  First, he believes that the ALJ erred in substituting his own opinion for that of both Dr. Patel and Dr. Ripka and that the ALJ erred in assigning more weight to a non-examining physician's opinion than to the opinions of two examining physicians. (Doc. 8 at 21.) Second, Plaintiff contends that the ALJ failed to state adequate reasons for finding him not credible.  (Doc. 8 at 27.)  Third, he contends that the ALJ's decision was not based on substantial evidence.  (Doc. 8 at 32.) Fourth, Plaintiff believes that the ALJ's RFC assessment is not supported by substantial evidence.  (Doc. 8 at 34.) Fifth, Plaintiff contends that the ALJ is biased against the claimants.  (Doc. 8 at 37.)

### A.    Medical Opinion Evidence

Plaintiff contends that the ALJ erred in affording more weight to the opinion of Dr. Heilpern, a non-examining state agency physician, than was afforded to the opinions of Dr. Patel and Dr. Ripka, examining physicians. As a general matter, the weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is

a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ."  20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, the opinions of a one-time examiner or of a non-examining source are not entitled to any deference. *McSwwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Further, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Procedurally, the ALJ must articulate the weight given to different medical opinions and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The Court must also be aware that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R.

§§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Patel examined Plaintiff on July 22, 2013. (Tr. at 338.) On examination, Dr. Patel diagnosed Plaintiff with hyperlipidemia and hypertension, but determined that the hypertension was under control with medication. Dr. Patel also conducted an electrocardiogram and noted left ventricular hypertrophy. (Tr. at 339.) In a Medical Source Statement, Dr. Patel limited Plaintiff to ten pounds lifting and carrying, one hour sitting, and less than one hour standing and walking within an eight-hour workday. (Tr. at 340–45.) The Medical Source Statement further indicated that Plaintiff could occasionally perform activities requiring fine and gross motor functioning skills but could never perform most postural activities. (*Id.*) The Medical Source Statement also notes that Plaintiff has severe environmental limitations. (*Id.*)

The ALJ articulated several reasons for giving Dr. Patel's opinion little weight. (*Id.*) He explained that Dr. Patel's opinions regarding Plaintiff's physical,

postural, and environmental limitations were inconsistent with the fact that Plaintiff travelled to Dr. Patel's office and participated in the examination "without physically rebutting such extreme and non-functional limitations." (Tr. at 19.) Dr. Patel himself noted that Plaintiff's hypertension was under control with medication. (*Id.*) Dr. Patel also diagnosed hyperlipidemia, yet blood work taken six months before that diagnosis "showed unremarkable lipid and cholesterol levels." (Tr. at 19.)

Here, the ALJ's decision to give little weight to Dr. Patel's opinions is supported by substantial evidence. As noted above, Dr. Patel's opinions are contradicted by other medical records. And, apart from documenting what Plaintiff himself complained of, Dr. Patel's notes and the Medical Source Statement lack any explanation of the medical determinations supporting the limitations Dr. Patel placed upon Plaintiff. 20 C.F.R. § 416.027(d)(3) (stating that more weight should be given to opinions supported by explanations). As a result, it is impossible to determine whether Dr. Patel used objective tests to reach his conclusions, or whether he relied on Plaintiff's own reports of his symptoms, which appears more likely. *See Crawford v. Comm's of Soc. Sec.*, 363 F.3d 1155, 1159–60 (11th Cir. 2004) (one factor that an ALJ may consider in determining that good cause exists not to give a physician's opinion substantial weight is if the physician's opinion was based

primarily on the plaintiff's subjective complaints).Thus, the ALJ did not err in according little weight to Dr. Patel's opinions.

Plaintiff also contends that the ALJ erred in giving little weight to the opinions of Dr. Ripka, who examined Plaintiff on March 19, 2013 at the request of Plaintiff's counsel. During this examination, Plaintiff complained of weakness, shortness of breath, fatigue, blurred and double vision, chest pain, muscle spasms, hand and foot pain, depression, anxiety, memory loss, headaches, morning stiffness, and rapid heartbeats. (Tr. at 333–35.) Dr. Ripka's physical examination showed no abnormalities other than lack of dorsiflexion and tenderness of the left foot and a fifteen degree loss of dorsiflexion of the right foot. (*Id.*)

Dr. Ripka diagnosed Plaintiff with the following: recurrent migraine headache, traumatic arthritis in the left ankle with status post open reduction internal fixation, possibility of seizure disease as indicated by periods where Plaintiff is confused and tends to fall asleep, atrial fibrillations versus anxiety, lower extremity pain that may be gout, pain from hardware in the ankle that causes great difficulty walking without intense pain, and signs of possible heart failure as shown by rapid heart rate, atrial fibrillation, high blood pressure and weight changes. (*Id.*) Dr. Ripka also filled out a Physical Capacities Form, noting that during an eight-

hour workday, Plaintiff was limited to lifting ten pounds, sitting for two hours, and standing or walking for less than thirty minutes. (Tr. at 336.)

Dr. Ripka also testified at Plaintiff's hearing, stating that Plaintiff has fractured his left ankle twice, with one fracture requiring surgery in 2010, and that Plaintiff has hardware in his left ankle causing residual pain, loss of mobility, and loss of dorsiflexion. (Tr. at 47–57.) Dr. Ripka further testified that Plaintiff's medical records show a diagnosis of hypertension and that Plaintiff's sudden weight loss could be attributable to heart failure or other heart problems like tachycardia or atrial fibrillation. (Tr. at 48.) Dr. Ripka also stated that Plaintiff appeared to experience brief transient ischemic attacks, and that Plaintiff's complaints of excessive sleepiness could indicate the existence of a seizure disorder. (Tr. at 54.) Further, Dr. Ripka attributed his diagnosis of recurrent migraines to Plaintiff's headaches accompanied by sensitivity and nausea. (Tr. at 55.)

As with his decision to give little weight to Dr. Patel's opinions, the ALJ articulated several reasons for giving Dr. Ripka's opinions little weight. The ALJ noted that Dr. Ripka's physical examination of Plaintiff was fairly unremarkable, and thus,Dr. Ripka's diagnoses appeared to be based primarily on Plaintiff's subjective complaints. (Tr. at 21.) Further, Dr. Ripka's report contained

inconsistent statements. For example, Dr. Ripka diagnosed Plaintiff with atrial fibrillation and rapid heart rate despite the fact that his examination of Plaintiff showed normal heart activity. (Tr. at 333–35.) Further, medical records from the Etowah Free Community Clinic do not support Dr. Ripka's opinions, as those records indicate that Plaintiff's hypertension was under control with medication, that he had no cardiovascular problems, and that he only occasionally complained about headaches and pain in his left ankle. (Tr. at 317–18, 322–30, 347–51.)

The ALJ's lengthy discussion of Dr. Ripka's opinions, as well as his reasoned justifications for according them little weight in his evaluation of Plaintiff, demonstrate that the ALJ properly considered the evidence contained within the record and that substantial evidence supports his determination. Therefore, the ALJ did not err in according little weight to Dr. Ripka's opinions.

Plaintiff further contends that the ALJ erred in assigning more weight to the opinion of Dr. Heilpern, a non-examining physician and state agency consultant, than he assigned to the opinions of Dr. Patel and Dr. Ripka. State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if, as here, the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(3)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 61 Fed. Reg. 34,466-01 (July 2, 1996).  Dr. Heilpern

stated that Plaintiff could perform light work with limited pushing and pulling in the lower left extremity, could not climb ladders, ropes, or scaffolds, could perform up to frequent climbing of stairs or ramps, and could not be exposed to hazards. (Tr. at 304–05.) The ALJ afforded significant weight to Dr. Heilpern's opinions, which were based on Plaintiff's own allegations regarding the severity of his symptoms and limitations and were consistent with Plaintiff's medical records and treatment reports. (Tr. at 22.) Substantial evidence thus supports the ALJ's decision to give Dr. Heilpern's opinions significant weight.

Plaintiff further contends that the ALJ improperly substituted his own opinion, as opposed to relying on medical evidence, in his decision to assign little weight to Dr. Patel and Dr. Rapka's opinions. However, as explained above, the ALJ in fact relied on medical evidence in the record and did not substitute his own medical opinion in deciding to assign little weight to Dr. Patel and Dr. Ripka's opinions.

## B.    Credibility Determination

Plaintiff also contends that the ALJ failed to state adequate reasons for discrediting his allegations of pain and other symptoms. Disability benefits may not be paid solely on the basis of a claimant's own self-serving complaints. *See* 42 U.S.C § 423(d)(5)(A). However, subjective testimony of pain and other symptoms

may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, the Eleventh Circuit has set forth a two-part standard: "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

Once the plaintiff has met the pain standard, the ALJ then considers the plaintiff's subjective testimony of his symptoms. *Foote*, 67 F.3d at 1560; *see also* 20 C.F.R. § 404.1529 (2013). The ALJ may discredit Plaintiff's subjective testimony, but he must provide sufficient reasons for this decision. *Wilson*, 284 F.3d at 1225; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). There is no precise formula that the ALJ must follow when explaining why he has discredited a plaintiff's testimony. However

"the implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). In determining credibility, the ALJ may consider evidence such as a plaintiff's medical history, medical treatment plan, and reported daily activities. 20 C.F.R. § 404.1529(c)(3) (2013). The credibility determination does not need to refer to "every piece of evidence in his decision [regarding credibility], so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered [his] medical condition as a whole." *Dyer*, 395 F.3d at 1210-1211.

Here, the ALJ determined that Plaintiff presented evidence of medically determinable underlying impairments that could reasonably be expected to cause his alleged pain. (Tr. at 18.) However, as noted, meeting the pain standard does not automatically end the ALJ's analysis if the ALJ rejects the plaintiff's complaints for lack of credibility. *See Foote*, 67 F.3d at 1560-61 (meeting the judicial pain standard is only a threshold inquiry and the ALJ may reject the complaints by offering specific reasons); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992) ("After considering a claimant's complaints of pain [under the above standard], the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984)). The ALJ correctly continued the analysis of whether Plaintiff's complaints

regarding the intensity, persistence, and limiting effects of those symptoms were credible by taking his subjective testimony into account. During this analysis, the ALJ found that "[a]lthough the claimant alleges debilitating symptomatology and limitations associated with his impairments, the evidence as a whole fails to confirm a disabling level of functional limitations caused by any physical impairment." (Tr. at 19.)

Plaintiff contends that "[t]he 'reasons' set out in the body of the decision by the ALJ are not adequate reasons for finding the claimant not credible." (Doc. 8 at 31.) However, the ALJ provided detailed reasons for discrediting Plaintiff's testimony, such as pointing out that Plaintiff's subjective allegations of debilitating symptoms and limitations were inconsistent with his medical records. (Tr. at 19–22.)

Plaintiff testified to the following symptoms and limitations: left ankle pain that he ranked as an eight on a scale of one-to-ten, constant shortness of breath, dizziness, high blood pressure, difficulty standing in one spot and the inability to stand for more than ten minutes at a time, lifting up to ten pounds and sitting ten-to-fifteen minutes at a time, the inability to perform housework due to shortness of breath when climbing stairs, constant headaches, the inability to drive due to headaches and dizziness, and sleep apnea causing him to sleep about four hours

during the day, stay awake for a few hours, and then go back to sleep. (Tr. at 34–42.)

The ALJ compared Plaintiff's subjective complaints to his medical records. The ALJ pointed to the fact that medical records from the Etowah Free Community Clinic indicate that Plaintiff's hypertension was being controlled with medication, and medical records from consultative examinations by Dr. Tariq in January 2011 and Dr. Ripka in March 2013 show that Plaintiff's blood pressure was normal. (Tr. at 310, 317–18, 322–30, 334.) Further, the ALJ noted that records from the Etowah Free Community Clinic between September 2011 and February 2013 show that Plaintiff did not complain about shortness of breath and his complaints of dizziness and fatigue were limited to April 2012 and February 2013. (Tr. at 317–30.) Similarly, records from the Etowah Free Community Clinic show that Plaintiff was prescribed headache medication in August 2011 and did not complain about headaches during a follow-up appointment in September 2011, denied having headaches in October 2012, and did not need further treatment for headaches until January 2013. (*Id.*)

Similarly, Plaintiff complained of excessive sleepiness in October 2012 but his medications were then changed, and no further complaints of sleepiness appear in the Etowah Free Community Clinic records. (Tr. at 317–30.) Records from a

February 2013 visit to the Etowah Free Community Clinic indicate that while Plaintiff complained of problems with blood pressure, headaches, and eye pain, the only medical restriction given was that Plaintiff was restricted from driving. (Tr. at 330.)

Further, the ALJ noted that while Plaintiff complained of debilitating left ankle pain and related problems, medical records indicate that after Plaintiff's post-surgery follow-up appointment in May 2010, Plaintiff did not seek treatment for his ankle until April 2012. (Tr. at 323.) A physical examination of the ankle at that time showed mild tenderness and no swelling. (*Id.*) When Plaintiff complained of ankle pain again in October 2012, he indicated that Advil helped relieve the pain. (Tr. at 326.) And consultative examiner Dr. Tariq noted during his November 2011 examination that Plaintiff was able to walk without assistance (exhibiting a mild antalgic gait with slow, short steps), sit comfortably, and get on and off of the examination table without assistance. (Tr. at 309–12.) Further, Dr. Tariq noted that Plaintiff showed a 4/5 of motor and muscle strength of the left lower extremity and some loss of deep tendon reflex in the left ankle. (*Id.*)

The ALJ also noted that Plaintiff had no significant medical complaints until he was evaluated by Dr. Ripka at the request of Plaintiff's counsel. (Tr. at 22.) Additionally, ALJ considered Plaintiff's limited daily and social activities in his

credibility determination, finding that two factors weighed against those activities being strong evidence of disability: (1) those limited activities could not be objectively verified with any reasonable certainty, and (2) even if those activities were as limited as Plaintiff reported, the weak medical evidence indicated that those limitations were attributable to reasons other than medical disability. (Tr. at 22.)

In sum, the ALJ explained in detail his reasons for finding Plaintiff's allegations of subjective symptoms not credible. He stated the extent to which he gave Plaintiff's allegations credence, engaging in an extended discussion of the medical evidence inconsistent with those allegations. The objective evidence provides support for the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and instead shows that he could perform a reduced range of light work. (Tr. at 18–23.) Substantial evidence supports the ALJ's credibility determination.

### C.    Substantial Evidence Supports the ALJ's Five Step Finding

As well as referencing his contentions that the ALJ erred by (1) substituting his own opinion in place of the opinions of Dr. Patel and Dr. Ripka, (2) rejecting Plaintiff's opinion, and (3) assigning more weight to a non-examining physician than the two examining physicians (all discussed and rejected above), Plaintiff

contends that the ALJ improperly relied on the VE's testimony, which was based on an invalid hypothetical question. (Doc. 8 at Page 32.) "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1229 (11th Cir. 2002)). However, the ALJ's hypothetical need not reference symptoms that the claimant "alleged to suffer but were either not supported by her medical records or were alleviated by medication." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

Here, Plaintiff's arguments are based on the ALJ's decision not to include Dr. Patel's opinions as to Plaintiff's limitations in the hypothetical question. However, as the Court discussed in Part A, *supra*, there is substantial evidence to support the little weight given to Dr. Patel's opinions because those opinions were not supported by Plaintiff's medical records. Thus, the ALJ's hypothetical question appropriately referenced all of Plaintiff's relevant symptoms and impairments.

### D.    Substantial Evidence Supports the ALJ's RFC Assessment

Plaintiff also contends that the ALJ's assessment that Plaintiff had the RFC to perform restricted light work was conclusory because the ALJ did not explain his RFC finding as required in Social Security Ruling 96-8p. This ruling states the Commissioner's policies regarding the assessment of a claimant's RFC and calls for the ALJ to describe how the evidence supports his conclusion and why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Social Security Ruling 96-8p. While Plaintiff states that "[t]here is no evidence that [he] can perform light work [and t]he findings of the ALJ are conclusions without analysis" (Doc. 8 at 37), the ALJ thoroughly discussed the medical evidence supporting his conclusions. As discussed in the sections above, the ALJ articulated the weight given to evidence and reasons for giving that weight, and he described his reasons for finding Plaintiff's allegations of subjective symptoms not credible including pointing to specific medical records within Plaintiff's treatment history. (Tr. at 18–23.) The ALJ's RCF assessment is thus supported by substantial evidence and in accord with the applicable law.

### E.    Bias

Finally, Plaintiff argues that the ALJ was biased because he "failed to consider all of claimant's severe impairments, failed to consider claimant's combination of impairments in determining disability, failed to state adequate reasons for finding claimant not credible, made a decision based on an incomplete hypothetical to the vocational expert, and erred in assigning more weight to a non-examining physician than to an examining physician." (Doc. 8 at 39.) The Eleventh Circuit has held that a claimant is entitled to both a full and fair hearing and that an ALJ shall not conduct a hearing if he or she is prejudiced with respect to a party to a case or has any interest in the outcome of the pending matter. *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996) (citing 20 C.F.R. § 404.940). The ALJ plays a crucial role in the disability review process and "not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him." *Id*. The ALJ's impartiality is integral to the system. *Id*.

However, ALJs are presumed to be unbiased and exercise their decision-making authority with honesty and integrity. *Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982); *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975). These presumptions can only be overcome by demonstration of either a conflict of interest

of the ALJ or another specific reason for disqualification. *McClure,* 457 U.S. at 195. The burden of overcoming these presumptions rests with the plaintiff. *Id.* at 196. Even if a hearing is "less than totally satisfactory," remand is unwarranted unless the claimant can show prejudice. *Kelley v. Heckler*, 761 F.2d 1538, 1540-41 (11th Cir. 1985). A showing of prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him, or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.* at 1540. The main concern is whether there are any evidentiary gaps which would result in unfairness. *Id.*

A review of the hearing transcript, the evidence submitted, and the ALJ's written decision shows that the ALJ considered all of the evidence in the record when reaching his decision and that Plaintiff does not contend that he was prevented from or otherwise unable to submit evidence relevant to his claim. Further, Plaintiff's specific complaints that he contends exemplify the ALJ's bias are themselves without merit, as discussed above in Parts A through D, *supra*. Plaintiff has thus not met his burden of overcoming the presumption that the ALJ was unbiased.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. Huntley's arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law.  A separate order will be entered.

DONE and ORDERED on March 28, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

182184